UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALEXANDER VENIAMIN SVIRIDIUK,<br><br>　　　　　　　Petitioner,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　　Respondent. | CASE NO. C14-5017 BHS<br><br>ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE |

This matter comes before the Court on Petitioner Alexander Veniamin Sviridiuk's ("Sviridiuk") motion to vacate, set aside or correct sentence (Dkt. 1). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

## I.  PROCEDURAL HISTORY

On December 7, 2011, the Government filed an indictment against Sviridiuk and his cousin, Natalya Sviridyuk ("Natalya"), alleging six counts of bank fraud. Cause No. 11-CR-5581BHS, Dkt. 1. On February 17, 2012, Natalya pled guilty to all six counts. *Id.*, Dkt. 24.

1    On May 17, 2012, the Government filed a superseding indictment against only
2  Sviridiuk alleging twenty counts of bank fraud. *Id.*, Dkt. 38. On October 9, 2012, the
3  Court began a five-day jury trial on the charges in the superseding indictment against
4  Sviridiuk, who was represented by attorney Des Connall. *See id.*, Dkts. 61–66. On
5  October 15, 2012, the jury returned a verdict of guilty on all twenty counts. *Id.*, Dkt. 70.
6    On January 29, 2013, Sviridiuk filed a motion to substitute attorney Allen Bentley
7  for Mr. Connall. *Id.*, Dkt. 85. On January 30, 2013, the Court granted the motion. *Id.*,
8  Dkt. 88.
9    On June 25, 2013, the Court sentenced Sviridiuk to fifty-four months
10 imprisonment, five years supervised release with standard & special conditions, and
11 $1500 special assessment with restitution to be determined at a subsequent hearing. *Id.*,
12 Dkt. 106.
13   On July 8, 2013, Sviridiuk filed a notice of appeal. *Id.*, Dkt. 116.
14   On September 3, 2013, the Court entered an amended judgment that included
15 $901.632.88 in restitution. *Id.*, Dkt. 129.
16   On January 6, 2014, Sviridiuk filed the instant motion to vacate, set aside, or
17 correct his sentence. Dkt. 1. On March 18, 2014, Sviridiuk filed two memorandums in
18 support of his motion. Dkts. 9 & 11. On April 21, 2014, the Government responded.
19 Dkt. 14. On May 16, 2014, Sviridiuk replied. Dkt. 21.

## II.  FACTUAL BACKGROUND

21   The Government's case against Sviridiuk was based on the theory that he
22 orchestrated a scheme to defraud J.P. Morgan Chase and other financial institutions. The

Government alleged that Sviridiuk submitted false student loan applications on behalf of his clients when the clients had no intention of attending school. The Government called numerous witnesses including: the registrar of Washington State University, the registrar of the University of California Irvine, a bank fraud manager, multiple borrower or clients of Sviridiuk, and co-defendant Natalya. *See* Dkt. 14 at 4–27. In defense, Sviridiuk testified and he called one of his clients, Nikolay Trachuk. *Id*. at 27–36.

## III. DISCUSSION

In this petition, Sviridiuk raises five grounds for relief that are all based on ineffective assistance of counsel by Mr. Connall. "To establish ineffective assistance of counsel 'a defendant must show both deficient performance [by counsel] and prejudice.'" *Premo v. Moore*, 131 S. Ct. 733, 739 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). The Supreme Court has explained defendant's burden as follows:

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [*Strickland v. Washington*, 466 U.S. 668, 688 (1984)]. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id*., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*., at 687, 104 S. Ct. 2052.
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*., at 694, 104 S. Ct. 2052.

*Harrington v. Richter*, 131 S. Ct. 770, 787 (2011).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. The likelihood of a different outcome must be "substantial," not merely "conceivable." *Richter*, 131 S. Ct. at 792.

**A.  Performance**

Sviridiuk argues that Connall's representation fell below the objective standard of performance for five separate reasons

**1.  Exculpatory Information**

Sviridiuk claims that Connall failed to bring out exculpatory information through cross-examination of Natalya. Dkt. 11 at 3–7. It is undisputed that, during the initial investigation, Natalya told Agent Fredrickson that the clients were told they would have to go to school and that one of the reasons she applied for her own student loan was to go to school. This was a prior inconsistent statement because, at trial, Natalya testified that she had no contact with the clients, did not know whether the clients were told that they would have to attend school, and she had no intention of going to school when she applied for her own student loan. Tr. 4.44–85[1]. It is logical to assume that any attorney would impeach an incriminating witness, but Connall's closing argument sheds light on his strategy to distance Natalya from any client contact and place blame on Natalya for transferring the information that Sviridiuk obtained from the initial client contacts to the

---

[1] Refers to the trail transcript, day 4, pages 44–85.

online applications. Tr. 5.73–84. Connall explained that the business operations were set up such that Sviridiuk would meet with clients and inform them that they would have to attend school in order to obtain the student loan. *Id*. Then Sviridiuk would give the client's information to Natalya to enter into the online forms and submit the applications. *Id*. Connall's strategy would be undermined if any evidence was admitted linking Natalya to the initial client contacts, even if the evidence could have possibly impeached Natalya's testimony at trial. Therefore, the Court finds that such a strategy was reasonable and Connall did not commit an error, let alone a serious error, in failing to introduce Natalya's prior inconsistent statement.

    **2.    Exculpatory Witness**

Sviridiuk argues that Connall provided ineffective assistance when he failed to interview and call a potentially exculpatory witness, Larissa Sviridiuk ("Larissa"). Dkt. 11 at 7–11. First, the exculpatory nature of Larissa's testimony would only have amounted to the circumstances surrounding her loan. Her testimony would not have undermined the overwhelming testimony from the numerous other clients who admitted that they had no intention of going to school. Therefore, even if the testimony was offered, it would have had little value and the decision not to admit it was not objectively unreasonable.

Second, the merits of Larissa's testimony are suspect at best and hardly exculpatory. Sviridiuk claims that Larissa would have testified that she planned to attend school, but changed those plans when her father had a "series of heart attacks." Dkt. 11 at 8. Larissa, however, enrolled in classes and applied for the loan on May 7 and then

withdrew from class two days later on May 9.  Dkt. 14 at 46.  Thus, her father would have had to have suffered a series of heart attacks on one day, May 9.  Moreover, the loan was not dispersed until May 12, days after Larissa withdrew from school.  This timeline undermines the alleged exculpatory nature of the testimony.  Therefore, the Court finds no error in Connall's decision not to interview or call Larissa.

### 3.    Interpreter

Sviridiuk argues that Connall erred when he did not request an interpreter for the only other defense witness, Nikolay Trachuk ("Nikolay").  Dkt. 11 at 12–13.  This argument is without merit.  The argument is based solely on investigator's notes referencing Nikolay's English ability as limited and investigator's use of an interpreter.  Sviridiuk, however, fails to cite to a single point during trial where Nikolay was unable to understand English.  In fact, Nikolay's direct examination provides as follows:

> [Connall]: But you've been taking English lessons and you communicate quite often in English, correct?
> [Nikolay]: Yes.

Tr. 5.11.  Therefore, Sviridiuk has failed to show that Connall's assistance was ineffective on this issue.

### 4.    Students' Withdrawals

Sviridiuk argues that Connall was ineffective because he did not present evidence that some of Sviridiuk's clients were dropped from class by the educational institutions.  Dkt. 11 at 13–14.  Sviridiuk argues that this evidence would have undermined the prosecution's theory and argument that Sviridiuk knew that clients were not attending school because Sviridiuk himself withdrew students from the universities.  *Id*.  First, in

closing, Connall stated that students were dropped by the universities if they did not appear. Tr. 5.74.  While Connall could have articulated the exact numbers of university-dropped students, the failure to do so does not rise to the level of ineffective assistance. Connall's decision could be supported by numerous theories, including making a vague rebuttal to the prosecution's case on the issue so that more attention was not drawn to the students who were explicitly dropped by Sviridiuk or someone else with the ability to do so.  Moreover, the fact that some students were automatically withdrawn would not have undermined the testimony from the testifying clients that they had no intention of going to school and that Sviridiuk assured them that they could use the money for whatever they wanted.  Therefore, the Court finds that Connall's decision on this issue did not fall below an objective standard of reasonableness.

**5.    404(b) Evidence**

Sviridiuk argues that Connall was ineffective because he failed to suppress evidence under Federal Rule of Evidence 404(b).  The contested evidence is information regarding whether Sviridiuk inserted false financial information on the borrower's loan applications, such as inflated yearly incomes. Dkt. 11 at 14–17.  Sviridiuk's argument is without merit.  This evidence is (1) direct evidence of the charged crime of committing bank fraud, (2) admissible evidence that is inextricably intertwined with the charged crime, and (3) in any event, admissible evidence of his intent to defraud.  *See* Dkt. 14 at 56–59.  Therefore, the Court finds no error in Connall's failure to contest evidence under Rule 404(b).

### B. Prejudice

Even if Connall's performance fell below the reasonable standard of conduct, Sviridiuk has failed to show that he was prejudiced. The Government's case was extremely strong and nothing Sviridiuk contests shows a "reasonable probability . . . sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. While a different outcome is conceivable, the likelihood of such an outcome is not substantial. *Richter*, 131 S. Ct. at 792. Therefore, Sviridiuk has failed to meet his burden on the prejudice prong as well.

### C. Certificate of Appealability

A petitioner seeking post-conviction relief under 28 U.S.C. § 2255 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability ("COA") from a district or circuit judge. A certificate of appealability may issue only if a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

In this case, the Court concludes that Sviridiuk has failed to make a substantial showing of the denial of a constitutional right. Therefore, the Court declines to issue a COA.

## IV.  ORDER

Therefore, it is hereby **ORDERED** that Sviridiuk's motion to vacate, set aside or correct sentence (Dkt. 1) is **DENIED** and the Court **DECLINES** to issue a Certificate of Appealability.

Dated this 28th day of August, 2014.

BENJAMIN H. SETTLE
United States District Judge